**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| JANET C. CRUZ, | ) No. ED CV 17-2259-PLA |
|        Plaintiff, | ) **MEMORANDUM OPINION AND ORDER** |
| v. | ) |
| NANCY BERRYHILL, DEPUTY COMMISSIONER OF OPERATIONS FOR THE SOCIAL SECURITY ADMINISTRATION, | ) |
|        Defendant. | ) |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on November 6, 2017, seeking review of the Commissioner's[1] denial of her application for Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before a Magistrate Judge on November 27, 2017, and December 7, 2017.

---

[1] On March 6, 2018, the Government Accountability Office stated that as of November 17, 2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official. As of that date, therefore, she was not authorized to continue serving using the title of Acting Commissioner. As of November 17, 2017, Berryhill has been leading the agency from her position of record, Deputy Commissioner of Operations.

Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on August 20, 2018, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Submission under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on December 2, 1990. [Administrative Record ("AR") at 52, 225.] She has no past relevant work experience. [AR at 53.]

On August 16, 2013, plaintiff protectively filed an application for SSI payments, alleging that she has been unable to work since January 1, 1996. [AR at 225-31.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 159.] A hearing was held on January 11, 2016, at which time plaintiff appeared without the assistance of an attorney or other representative, and testified on her own behalf. [AR at 46, 60-119.] A vocational expert ("VE") also testified. [AR at 109-16.] On June 1, 2016, the ALJ issued a decision concluding that plaintiff was not under a disability since August 16, 2013, the date the application was filed. [AR at 46-54.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 218-24.] When the Appeals Council denied plaintiff's request for review on September 15, 2017 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

## A.     THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the

second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsbury, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 16, 2013, the application date. [AR at 48.] At step two, the ALJ concluded that plaintiff has the severe impairments of spina bifida and scoliosis of thoracic spine and lumbar spine status-post fusion. [Id.] She found that plaintiff's impairments of migraines and temporomandibular joint disorder ("TMJ") did not cause more than minimal limitation in plaintiff's ability to perform basic work activities and, therefore, were nonsevere. [Id.] She also found plaintiff's alleged mental impairments of anxiety and depression to be nonsevere. [Id.] At step three, the ALJ determined

that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 49.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform light work as defined in 20 C.F.R. § 416.967(b),[3] as follows:

> [She] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; [she] can sit six hours in an eight-hour workday; [she] can stand and/or walk four hours in an eight-hour workday; [she] can push and/or pull as much as [she] can lift and/or carry; [she] can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; and [she] can occasionally balance, stoop, kneel, crouch, and crawl.[4]

[AR at 49-50.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff has no past relevant work. [AR at 52.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "small products assembler I" (Dictionary of Occupational Titles ("DOT") No. 706.684-022), as an "electronics worker" (DOT No. 726.687-010), and as a "sewing machine operator" (DOT No.

---

[2]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

[4]    In her hypothetical to the VE, the ALJ did not include plaintiff's RFC limitation to occasional balancing, stooping, kneeling, crouching, and crawling. [AR at 49, 112.] When posing hypotheticals to the VE on remand, the ALJ must include all of plaintiff's functional limitations supported by substantial evidence in the record. Lubin v. Comm'r of Soc. Sec. Admin, 507 F. App'x 709, 712 (9th Cir. 2013) ("the ALJ must include all [RFC] restrictions in . . . the hypothetical question posed to the vocational expert"); Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012) ("If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.") (citation and internal quotation marks omitted).

1   786.685-030[5]).  [AR at 53-54.]  Accordingly, the ALJ determined that plaintiff was not disabled at

2   any time since August 16, 2013, the date the application was filed.  [AR at 54.]

3

4                                              **V.**

5                                    **THE ALJ'S DECISION**

6          Plaintiff contends that the ALJ erred when she rejected plaintiff's subjective symptom

7   testimony.  [JS at 4.]  As set forth below, the Court agrees with plaintiff and remands for further

8   proceedings.

9

10  **A.     ANALYSIS**

11         Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's

12  subjective symptom testimony.  [JS at 4-13.]

13         The ALJ summarized plaintiff's testimony as follows:

14         [She] testified she is unable to work due to her back problems from her spine being
           curved.  She described having surgeries, one of which pinched a nerve causing her
15         pain to worsen.  She also indicated she needs another surgery on her spine
           because the rods in her back were removed causing her spine to be more curved.
16         She said she is unable to walk correctly, she falls down, she cannot bend down at
           the waist to pick up something off the ground, and while she can put on her shirt,
17         she needs help putting on her socks and underpants.  She stated that while she
           could pick up her son when he was a baby, she can no longer pick up her 4-year-old
18         son.  She also described needing help bathing and dressing her son and cleaning
           the house, and said she mainly uses disposable dishes because she cannot stand
19         at the sink without pain.

20  [AR at 50.]

21         The ALJ discounted plaintiff's subjective symptom testimony as follows:

22         After careful consideration of the evidence, I find that [plaintiff's] medically
           determinable impairments could reasonably be expected to cause the alleged
23         symptoms; however, [plaintiff's] statements concerning the intensity, persistence
           and limiting effects of these symptoms are not entirely consistent with the medical
24         evidence and other evidence in the record for the reasons explained in this decision.

25         . . . .

26  _____

27        [5]   Although the VE testified (and the ALJ accepted) that the position of "Sewing Machine
    Operator, Semi-Automatic" is DOT number 786.685-031 [see AR at 54, 112], it appears that this
28  position is actually DOT number 786.685-030.

                                              6

. . . While the evidence supports the presence of spina bifida and scoliosis of thoracic spine and lumbar spine status-post fusion, the medical evidence does not support [plaintiff's] allegations. Further, the objective medical evidence is inconsistent with the alleged severity of the functional limitations imposed by [her] impairments and suggests [her] symptoms and limitations were not as severe as [she] alleged. The positive objective clinical and diagnostic findings, detailed below, do not support more restrictive functional limitations than those assessed herein.

. . . .

. . . Despite her allegations at the hearing regarding her difficulty with standing, walking, and sitting, at another general physical examination, on March 18, 2014, she was noted to ambulate independently and be able to sit at a desk/computer. Further, at the visit, [plaintiff] acknowledged having been on gabapentin in the past, but she did not know the dose nor the pharmacy the medication was last filled, which suggests she was not always compliant with her medication treatment and suggests her symptoms may not have been limiting as alleged. . . . On July 27, 2015, she denied back pain, and she had . . . normal gait, station, and posture. On January 24, 2016, she denied the presence of back pain, joint swelling, numbness, tingling, and weakness. Accordingly, while the objective clinical findings prior to her application clearly support the presence of spina bifida and scoliosis, the generally normal physical examination findings, combined with the lack of evidence to correlate with [plaintiff's] allegations regarding her symptoms, fails to support any greater limitations than adopted herein.

. . . .

. . . [T]he physical examinations showed generally normal findings that were not consistent with [plaintiff's] allegations. I generously considered [her] subjective complaints in adopting the additional postural, standing, and sitting limitations identified herein.

. . . In sum, the above [RFC] assessment is supported by the evidence as a whole. The evidence reveals [plaintiff] has a longstanding history of back problems with multiple surgeries, but since the application date her treatment has been sporadic and inconsistent, and the statements to her physicians have not been consistent with the severity she alleged at the hearing. In addition, although she alleged side effects of dizziness at the hearing, there is no evidence of these complaints in the treatment records. Accordingly, I find [plaintiff] has not been deprived of the ability to perform work subject to the residual functional capacity assessed by this decision for any 12-month period since the application date.

[AR at 50-52 (citations omitted).]

On March 28, 2016, prior to the ALJ's assessment in this case, Social Security Ruling ("SSR")[6] 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p

---

[6] "The Commissioner issues [SSRs] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to
(continued...)

supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. Id. at *1. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id.; Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2. The Ninth Circuit also noted that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expect to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 871 F.3d at 678 n.5 (citing SSR 16-3p).

To determine the extent to which a claimant's symptom testimony must be credited, the Ninth Circuit has "established a two-step analysis." Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Garrison, 759 F.3d at 1014-15); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate the

---

[6](...continued)
SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit [her] . . . ability to perform work-related activities . . . ." SSR 16-3p, 2016 WL 1119029, at *4. An ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony about the severity of her symptoms. Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15); Treichler, 775 F.3d at 1102.

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not make a finding of malingering [see generally AR at 50-52], the ALJ's reasons for rejecting a claimant's credibility must be specific, clear and convincing. Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

Here, in discounting plaintiff's testimony, the ALJ found the following: (1) plaintiff's subjective complaints were not supported by the objective evidence; and (2) plaintiff's subjective complaints were not supported by "other evidence in the record." [AR at 50.]

### 1.    Objective Evidence

The ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms" were "not entirely consistent with the medical record." [Id.]

First, after summarizing plaintiff's extensive surgical history from 1997 through 2008, the

ALJ stated that after plaintiff had spinal hardware removed on March 18, 2008, "she still had complaints of pain and exhibited severe scoliosis through 2010, [but] as of October 20, 2010, her general physical examination was within normal limits, and the frequency of her visits for back-related complaints lessened." [AR at 51 (citing AR at 918, 1136).] However, despite the ALJ's suggestion that plaintiff's October 20, 2010, physical examination was "normal," plaintiff appeared at that visit complaining of left foot pain, rib and back pain, stomach pain, chest pain, and dizziness, and told the examiner that for two months she had been experiencing pain in her back and numbness on the bottom of all of her toes. [AR at 1134, 1135, 1136.] The examiner noted that plaintiff had a history of weakness in her left leg that had been progressing, and although plaintiff's "general" physical examination was described as "normal," and also reflected "NAD," i.e., she was in "no acute distress," the examination reflected abnormal findings with respect to tenderness on her left flank, severe scoliosis, and decreased strength with extension and flexion of her "great toe" on both feet. [AR at 1136.] The treating examiner assessed plaintiff with back pain, spina bifida, and "nerve compression L [left] leg," and ordered an x-ray of plaintiff's left ribs. [AR at 1136, 1139.] The x-ray report showed that there was "redemonstration of severe S-shaped scoliotic deformity of the thoracolumbar spine, with extensive associated rib deformities," and a "[f]ocal deformity of the left fourth and fifth ribs [that] may be congenital, postsurgical or posttraumatic in nature." [AR at 1139.] Accordingly, the ALJ's suggestion that plaintiff's "general" physical examination as of October 20, 2010, demonstrated that she was "within normal limits," without mentioning the specific results that were not "normal," was not a specific, clear and convincing reason supported by substantial evidence for discounting plaintiff's subjective symptom testimony.

Second, the ALJ stated that on January 15, 2013, plaintiff described "continued pain and . . . exhibited tenderness to palpation with decreased range of motion, *but she was in no acute distress, she denied muscle weakness, and she denied gait abnormality.*" [AR at 51 (citing AR at 1235-36) (emphasis added).] The ALJ failed to mention that plaintiff went to that January 2013 visit complaining of "pain in left foot and also lower back pain, [which she stated] is constant and . . . radiat[i]ng to left leg and foot." [AR at 1235.] Instead, the ALJ attempted to portray the

provider's statement that plaintiff generally was in "no acute distress," and plaintiff's own "denial" of muscle weakness and gait abnormality at that 2013 visit, as inconsistent with plaintiff's testimony three years later regarding her symptoms and limitations. Indeed, although the treatment record indicates that plaintiff was in "no acute distress" at that visit, this does not mean that she presented with no significant back pain due to her chronic conditions; it simply means that she presented with "no *acute* distress"[7] **and** back pain. Thus, although plaintiff testified on January 11, 2016, that she "can't walk right" and has to be very careful or she falls down [AR at 84], the fact that she denied "gait abnormality" at a visit to her doctor three years earlier, or that her treating providers found that she was not in "acute distress" at some of her visits, is not substantial evidence sufficient to support the ALJ's decision to reject plaintiff's subjective symptom testimony regarding her limitations and pain.

Third, the ALJ stated that "despite [plaintiff's] allegations at the hearing regarding her difficulty with standing, walking, and sitting, at another general physical examination, on March 18, 2014, she was noted to ambulate independently and be able to sit at a desk/computer." [AR at 51 (citing AR at 1255).] The ALJ's conclusion does not follow from her premise -- plaintiff did not testify at the hearing that she is unable to "ambulate independently" or that she is unable to "sit at a desk/computer." Further, there is no indication in the March 18, 2014, treatment record (or any other treatment record) detailing *how long* plaintiff can either "ambulate independently," or "sit at a desk/computer." [AR at 1255.] Accordingly, the ALJ's suggestion that plaintiff's testimony was somehow inconsistent with this treatment note is not supported by substantial evidence.

Fourth, the ALJ stated that a July 27, 2015, treatment record reflecting that plaintiff denied back pain and had "normal gait, station, and posture," "failed to support [plaintiff's] allegations regarding the severity of her symptoms." [AR at 51 (citing AR at 1279-80).] However, a review

---

[7]     "[I]n a medical context 'acute' means 'having a rapid onset, severe symptoms, and a short course; not chronic.'" See Ekola v. Colvin, 2014 WL 4425783, at *6 (D. Ariz. Sept. 9, 2014) (quoting Taber's Cyclopedic Medical Dictionary A-32 (13th ed. 1977)). Thus, when a patient is described as being in "no acute distress" (a term that appears frequently in the medical records reviewed by this Court), this appears to be an indication of whether the patient has had a rapid onset of severe symptoms that constitute an emergency, and otherwise "is somewhat meaningless" with respect to describing a patient's **chronic** condition(s). Id.

of the July 27, 2015, treatment record also shows that plaintiff -- who presented at the Urgent Care that day complaining only of a skin rash -- was nevertheless also assessed with "abnormal" upper extremity strength and tone and "abnormal" lower extremity strength and tone.[8] [AR at 1280.] This record does not constitute substantial evidence sufficient to refute plaintiff's testimony regarding her symptoms and limitations.

Finally, the ALJ noted that on January 24, 2016, plaintiff "denied the presence of back pain, joint swelling, numbness, tingling, and weakness," again failing to support plaintiff's testimony regarding the alleged severity of her symptoms. [Id. (citing AR at 1283).] However, a review of the January 24, 2016, treatment record reflects that plaintiff presented at the Urgent Care complaining of a sore throat for about a week. [AR at 1283.] That record also reflects that plaintiff was not otherwise examined for anything beyond her complaint of a lingering sore throat. [AR at 1283-85.] This record does not constitute substantial evidence sufficient to refute plaintiff's subjective symptom testimony.

Based on the foregoing, the ALJ's conclusion that the objective clinical findings and "normal physical examination findings, combined with the lack of evidence to correlate with [plaintiff's] allegations regarding her symptoms," fails to support any greater limitations than those assessed in the RFC, was not a specific, clear and convincing reason supported by substantial evidence for discounting plaintiff's subjective symptom testimony. And, even assuming this was a specific, clear and convincing reason for discounting plaintiff's testimony, the ALJ's determination to discount plaintiff's subjective symptom testimony for this reason rises or falls with the ALJ's other grounds for discrediting plaintiff. See Trevizo, 871 F.3d at 679 (an ALJ "may not disregard a [claimant's testimony] solely because it is not substantiated affirmatively by objective medical evidence") (quoting Robbins, 466 F.3d at 883) (internal quotation marks omitted). As seen below, the ALJ's other ground for discounting plaintiff's subjective symptom testimony is insufficient as well.

_____

[8]     Although the note does not specify whether plaintiff's upper and lower extremity strength and tone was abnormally high or abnormally low, from context it would appear to refer to abnormally low strength and tone.

## 2. "Other Evidence"

The ALJ also discounted plaintiff's allegations because her alleged symptoms were "not entirely consistent with . . . other evidence in the record."[9] [AR at 50.]

The ALJ considered that the opinions of the consultative internal medicine examiner, to whom she gave "great weight," were inconsistent with plaintiff's testimony at the hearing, and "generally consistent with the objective clinical findings." [AR at 52.] However, this was largely because the ALJ believed -- as discussed above -- that plaintiff's "physical examinations showed generally normal findings that were not consistent with [plaintiff's] allegations." [Id.] As discussed above, this finding was not supported by substantial evidence. Thus, to the extent that the ALJ considered the report of the consultative internal medicine examiner to be "other evidence in the record" that was inconsistent with plaintiff's testimony, this was not a specific, clear and convincing reason supported by substantial evidence to discount plaintiff's subjective symptom testimony.

The ALJ also stated that plaintiff acknowledged at an office visit that she had been on gabapentin "but she did not know the dose nor the pharmacy the medication was last filled." [AR at 51.] The ALJ then stated that this "suggests [plaintiff] was not always compliant with her medication treatment and suggests her symptoms may not have been limiting as alleged." [AR at 51 (citing AR at 1255).] The ALJ, however, points to no evidence in the record suggesting that plaintiff "was not always compliant with her medication treatment"; neither does she explain why not remembering dosage on a medication or where it was filled is suggestive of an individual's symptoms not being as limiting as alleged. Indeed, this unfounded leap in logic does not constitute a specific, clear and convincing reason supported by substantial evidence sufficient to discount plaintiff's subjective symptom statements.

The ALJ also suggests that although plaintiff complained at the hearing that her

---

[9] Plaintiff appears to contend that the ALJ rejected her testimony on the basis that her care had been conservative in nature. [JS at 10 (citing AR at 52).] However, the Court does not find that the ALJ suggested this reason and, therefore, declines to discuss it herein. Additionally, to the extent defendant's response covers the same ground as discussed by the Court with respect to the objective evidence [see JS at 16-18], the Court will not consider or discuss those reasons again.

medications make her dizzy, "there is no evidence of these complaints in the treatment records." [AR at 52.] However, as discussed above, there is at least one record showing that plaintiff complained of being dizzy. [See AR at 1134.] Accordingly, this was not a specific, clear and convincing reason supported by substantial evidence to discount plaintiff's subjective symptom statements.

Finally, the ALJ states that since August 16, 2013, plaintiff's application date, "her treatment has been sporadic and inconsistent." [AR at 52.] Plaintiff testified, however, that in the three years prior to the January 2016 hearing, she had moved to Barstow for a while and used Choice Medical Group for treatment, although she had been told that the doctors in that area were not good, so she "didn't continue treatment . . . there." [AR at 72.] The records reflect that between October 26, 2012, and July 25, 2013, plaintiff visited Choice Medical Group in Barstow several times, and that while treating there, she had x-rays taken of her left foot [AR at 1230], thoracic spine, and lumbar spine. [AR at 1230-39.] She also testified that she had moved back to Rialto and was able to continue her treatment with Loma Linda University (where she had been treating prior to her move to Barstow), as well as with other clinics in that area. [AR at 75, 76.] Plaintiff also noted that she had some trouble obtaining referrals for orthopedic and pain management and that her insurance was not accepted at one of those referrals and she had to look for someone else to treat with. [AR at 79.] In short, plaintiff provided a reasonable explanation for any alleged gap in treatment and, therefore, this was not a specific, clear and convincing reason supported by substantial evidence to discount plaintiff's subjective symptom statements.

## B.     CONCLUSION

Based on the foregoing, the ALJ's subjective symptom testimony determination was not "sufficiently specific" to allow this Court to conclude that the ALJ rejected plaintiff's testimony on permissible grounds and did not arbitrarily discredit her testimony regarding pain and fatigue. Brown-Hunter, 806 F.3d at 493 (quoting Bunnell, 947 F.2d at 345-46). Remand is warranted on this issue.

# VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. <u>Trevizo</u>, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. <u>Id.</u> (citing <u>Garrison</u>, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. <u>See Garrison</u>, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. Because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record for discounting plaintiff's subjective symptom testimony, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. The ALJ shall then reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.

# VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: September 24, 2018

_Paul L. Abrams_

_____

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE